May it please the court, my name is Isaac Zorian, I represent the appellant in this appeal. I would like to reserve a few minutes. We'll try to help you keep track. Thank you. Admiralty jurisdiction in this case does not exist because the underlying dispute in this case is between Alaskan residents who dispute over how properly to characterize their business relationship. The underlying dispute in this case is not wholly maritime in nature but rather is exclusively related to Alaska statutes, specifically Alaska's Uniform Partnership Act. We read it and I understand. You tell me what the acts of your client were prior to the time this action was brought. He disclaimed, by his actions he seemed to disclaim all partnership aspects of this relationship until it came time to defend this lawsuit and then he claimed it was a partnership. Now am I missing something? What does the record show about his conduct and his legal actions prior to the time of this lawsuit? Well his conduct, first of all the appellee, Mr. Rockwell, is the only person of all the employees for this vessel who didn't receive his seaman wages during this period of time. He's the only one, all the other people who were seaman aboard the vessel received their payment. Now before this whole matter arose, April 22, 1998, Mr. Rockwell, Mr. Rockwell came to Mr. Swenson and said I have a business proposal for you. I want to start up a business between yourself and myself to purchase a vessel. At this point there was no vessel at all in the possession of either party. Can I back up just a minute? And I think once I've done this we can move on easily to exactly where you now are. But you started out with the argument that there is no jurisdiction in the admiralty court. And I think we take it as established law that if we're talking about establishing the relationship, the consequences of a partnership relationship, there is no admiralty jurisdiction. That's right. On the other hand if we're talking about establishing the consequences of an employer-employee relationship, there is admiralty jurisdiction. Yes. And I take it also as sort of black letter law that a court has jurisdiction to determine its jurisdiction, which means that the court sitting in admiralty had jurisdiction to determine whether or not this was a partnership or an employee relationship. So your argument really is not a separate jurisdictional argument. Your argument is that the merits of the court's decision, because the merits of the court's decision are the basis for the jurisdictional determination as well. So what we're really just asking about is was the district judge correct in finding that this was an employee-employee relationship? Yes. Okay. And the main error in the district court's assessment is that he never once identified Alaska's Uniform Partnership Act. This relationship between Mr. Swenson and Mr. Rockwell was formed before the vessel was purchased, and it was formed under Alaska statutes. And Alaska statute permits partnership by estoppel. There was ample evidence produced that Mr. Rockwell walked around to everyone saying, I am a partner. I am the co-owner of this vessel. This is my vessel. I'm the partner. The reason this is a tricky case, or the reason it turns into a lawsuit instead of just paying me my money, is that the relationship was ambiguous. I mean, what you say is right, but there were some other things that support an employee relationship. And the district judge said, well, you know, on balance, while this is I find this was employer-employee. Why is that, I think, you have to determine, clearly erroneous? Well, I think on jurisdictional questions, this court exercises de novo review, I believe. So you're saying, but if they're disputed facts, what happened, what didn't happen, that's clearly erroneous, but if the facts are clear, then it's de novo? Yes. We think that the facts are clear. There was no dispute. It was what people said? Okay. Yeah. All the facts are, we're not disputing what trial, the findings of facts. We're also not disputing what was in our summary judgment motion. Those facts are not disputed. So whether jurisdictional or not, you're just saying the facts are undisputed, the question is the legal consequence of the facts. Exactly. Yes. Yeah. We believe that through, you know, the judge, the trial court judge concluded without saying anything. He said, well, I don't think there was a meeting of minds there. However, he also found that there was a special relationship between Swenson and Rockwell. He also found, finding the fact that Mr. Rockwell did not expect any payment at all until the business produced a profit. And also he determined that it was not until a year and a half after this relationship had existed that there was any type of a dispute. Mr. Rockwell said, Mr. Swenson said, I don't think you are entitled to 30%, you know, 38% of this partnership. And Mr. Rockwell said, you cannot change the terms of this partnership. That is, this partnership was established, you know, a long time ago and now you're trying to change that? And that's what he said in July of 1999, a year and a half after this. And then he said that was the straw that broke the camel's back. That one incident is what caused Rockwell to decide to leave the business. However, before he left the business, he took a $4,000 draw off a Peter Pan account, which was a business account. Now he acknowledged that he had absolutely no authorization to do that other than as the owner of the vessel. And so he decided he was going to leave the partnership and then he takes $4,000 that he said he used specifically for his own personal benefit. He thought that was what he was owed for wages in this matter. So he took that amount of money, then he left the business. Now, if in fact this was simply an employer-employee relationship, then what was the justification for taking that money? It would have been embezzlement if it was simply an employer-employee relationship. Mr. Rockwell stated there was no signed agency document executed between he and Mr. Swenson. The only authority that he had related back to the whole beginning of this venture in April 22nd, three days before this supposed employment contract. So we had a partnership forming in our Alaska law. It does not have to be writing. Our Alaska law recognizes oral partnerships. These two decided between themselves, we're going to form a partnership. Well, I'll go there and then I go where Judge Fletcher was. We then have to look at the district courts finding the facts to find out whether under Alaska law, those facts constitute a partnership. He said it was too vague or ambiguous and he went through some analysis. So you say he was clearly erroneous in his fact-finding. Well, I think that conclusion, he did make the, I think his justification for not finding a partnership was that there was nothing in writing. I thought he was talking about the facts were proposed that those were too vague and ambiguous to show that there was a partnership. He says there wasn't a meeting of minds, but that's not in the Alaska Uniform Partnership Act. In fact, the revised Uniform Partnership Act says that there is a partnership if two people are operating as co-owners, whether they intend to form a partnership or not. So this concept of intent is something that is a creation of reverting to contract line. So essentially, the district court is preempting Alaska's Uniform Partnership Act. In the Alaska partnership law, you have to have some terms of the partnership. What were the business terms of this partnership then and where do we find them in the record? Those are found in that employment contract signed April 25th. Where he was signed on as an employee. Well, he was signed on as an employee, but there was an addendum to that. And that addendum, both parties acknowledged, identified what the partnership split between the two people was to be. So it's not, the Rockwell argues that this is the same contract that every single person on that vessel signed, and that's incorrect. No other contract has signed, has on there this addendum. And this addendum established a 38%, 62% split. And it also says that that, the wages are only going to be brought about providing this profit. And after, after this profit, after you take out the expenses for the upcoming year, and then, and only then, is there going to be any wages. The district court even found that. The district court said there was no expectation of wages in this. So if this is an employer-employee relationship, there would obviously be an expectation of wages. The more important thing is that we have this April 25th contract. Well, that was a year before this breakup. During the off-season, the vessel was put into dry storage. Both parties contributed. Without any, obviously it wasn't, there was no employment contract controlling this because it had nothing to do with the sea. Both parties contributed to fixing up the vessel. Both parties contributed to preparing the vessel for the upcoming season. What do we do? I understand what you're saying. And there's some evidence on both sides. What do we do with the fact that there's a fair amount of evidence in the record under which your client, at various points, disavows the partnership? Well, I don't think that he did. He disavowed the partnership July 1999. He didn't really disavow it. He simply said, you don't deserve this 38% that we're getting. I'm putting in all this money. I have to start working in the tugboat again in order to keep this business running. And at that point in time, the contract in dispute was not maritime. It was their relationship. And if that's the case, Alaska's Uniform Partnership Law controls. And Rockwell should have sued him in the last court to get a dissolution of the partnership, a winding up of this partnership relationship. He shouldn't have taken it at face value that Swenson said there's no partnership. Alaska's Uniform Partnership Law said there was a partnership. No, no. The partnership would be the physical boat and the fishing business, right? The fishing business and a part of the partnership property would have been the fishing, the merchant vessel, large one. Who paid for the vessel? The business proceeds are... No, who paid for the vessel? Who bought it? Well, the title was in Mr. Rockwell because he was the only one accredited. Who took the tax advantages of the boat? Who reported it on their tax returns? The irony is that Mr. Rockwell said he was the sole proprietor of this large one venture. He also said he took depreciation and business expenses. He filed a 1099. Mr. Swenson also did. So both of them filed as the sole proprietors of that business. Oh, they did? Yeah, yeah. That's in the record. Mr. Rockwell signed that he knew. In his statement to the IRS, at the bottom it says all these investments are subject to the risks associated with loss. He signed that. He knew that he was signing as a sole proprietor for the Arch One venture. And so there's not any other employees of the Arch One who are signing, taking a Schedule C. I mean, he signed a Schedule C to the IRS. And then afterwards, when this little confusion occurred, and he didn't think he was getting any money, then he decides, well, I think it'd be more profitable if I were a seaman, and then I'll sue under seaman. But, you know, I think this Pacific Merchant versus Aubrey is applicable in this case in that this vessel never left Alaskan territorial waters. And so I think that Alaska's police power is over-defining whether or not somebody is or isn't a partner. I think that's more controlling than general contract. Can we back up for just a minute? I'm reading from paragraph 5 of the district court's order, where the district court writes, the Arch One is now owned by Defendant Swenson, and has been since he purchased it on April 23, 1998, for a total sales price of. Plaintiff has never had an ownership interest in this vessel. Is that incorrect? Because I think I heard you say something different. That is incorrect. Dean, this is where. What in your view is correct, and what's the evidence in support of your view was correct? Okay, and this is where reliance on Alaska Partnership Law controls, because Alaska Partnership Law says that there is a partnership interest in partnership property, irregardless of who owns the actual title to the vessel, or the partnership property. So title may be in Mr. Swenson, because he was the only one with credit who could negotiate this deal. However, because they had a partnership, Mr. Rockwell. Just to make sure I got that right, so Mr. Swenson has record title. Mr. Rockwell is not on the title. No, no. Okay. And it says, which he purchased. Now, where's the money coming from? The business. The business doesn't exist until they buy the boat. Where's the money coming from to go into the business? I believe that he didn't have to put up any money for the business. It was a negotiation with Tansina Corporation to get payments through the end of the season. He didn't pay cash out, but he still doesn't own the boat. He's making payments, and the payments were part of, there were some shipping contracts that were associated with the purchase of the vessel. So there's no down payment, there's no cash outlay? Not that I'm aware of. And certainly, Mr. Swenson didn't, I mean, if there was any, it would be $1,000 or something like that, but the key payments on this vessel were predicated on the vessel going out, working these contracts that they have, and then making payments at the end of the season. And that's the reason why Rock, most likely why Rockwell, went to Swenson to negotiate this thing, because Swenson had captain experience. He was a captain of a vessel, Rockwell wasn't, and so Rockwell could not captain that vessel. He couldn't negotiate sales and do all this stuff, but Mr. Swenson could. Now, Rockwell said, I can contribute some money to this, you can contribute experience. So what we have is truly a conflict between how this contract determined their relationship, and the error with the district court is that he never looked at the intricacies of the Uniform Partnership Act in Alaska to determine whether or not Mr. Swenson was incorrect. Well, I thought that Swenson set up Swensrock LCC as an alter ego of himself, and it did not include... That was, it was Spenrock, which is a derivative of Mr. Swenson and Mr. Rockwell. But it was only organized as an alter ego of Swenson, and Rockwell, as far as I know, was not part of it. No, and that's why the name is Spenrock, Swenson, Rockwell, and legally, they set up a limited liability corporation to protect the interests of the vessel, and Mr. Swenson, Mr. Rockwell was going to be legally on the separate limited liability corporation when he got his master's license, which he hadn't done before leaving this thing, but... I don't understand that. In other words, you have a legal, you have a limited liability corporation. Who is the corporation as far as a human being is concerned? Well, the limited liability company existed, and it was, all it did, the partnership still controlled, partnership agreement controlled between these two parties, so the limited liability company just protected both of them. Who made the contract with Peter Pan to, under which the drawing account was set up? I'm not certain who negotiated the contract. Most likely, in 1999, Swenson was handling the paperwork on land, and so he most likely negotiated... The guy that just got out of high school wasn't negotiating with Peter Pan? Well, he was the representative. He was in charge of the captain of the vessel in 1999. He was in charge of all the stuff going on. He was the representative of the Arch One Venture. When did Swenson first raise the question of admiralty jurisdiction in the court? In our summary judgment motion, as soon as, well before this case went to trial, we cited to the district court, in our summary judgment, all the statutes in the Uniform Partnership Act, we identified that this was a partnership case. So that was then denied, and the court found that it had jurisdiction under the admiralty law for Seaman's wages and the usual. Well, actually, he didn't. He found that there was a material fact as to jurisdiction, and this court has held that... Then he went ahead and had a hearing on it. Then he didn't even have a hearing. He just said there's material facts on this jurisdictional issue, so it goes to trial. I think he used the wrong standard at the summary judgment, material fact as to subject matter jurisdiction, and he said, well, let's go to trial to determine... Did it go to trial on a pre-trial order? Yeah. Was there any stipulation or anything about jurisdictional issues? No, I re-argued that I put on evidence to dispute any facts as to the meeting of minds as to partnership, and then argued that there wasn't a subject matter jurisdiction. Well, the jolly little wards of Admiralty have a lot of advantages when they come in with a complaint saying that they are Seaman, unpaid. But remember, in the complaint, they requested Alaska's Wage and Hour Act remedies. So here's a Seaman, so he's suing under Alaska's Wage and Hour Act, saying that he's a Seaman, so they're applying... Under what act? How would he ask for wages if not under the Alaska Act? Well, Seaman... The Seaman... The Shipping Act didn't apply in this case, and so he reverted to Alaska's Wage and Hour Act, which is, again, invoking... There's no diversity in this. But if he is an employee, I don't think you can test that. If he is an employee and he's not paid his wages as a Seaman, is it improper for him to rely on Alaska law for the entitlement to wages? Well, I think that without diversity, I think that if the question is... If the affirmative defense is that there is a business relationship here, then I don't think Admiralty can determine... No, that's not my question. My question is, assume an employee-employee relationship. It's not contested. He was a Seaman on the vessel. Assume further that he has not been paid his proper wages. Is his proper remedy when he goes to Admiralty Court to rely on the Alaska statute? Perhaps with Pacific v. Aubrey, you would have an argument that Alaska's Wage and Hour Act would control... So I think that's a red herring. Okay. Why don't we hear from the other side? You're over time, but we'll give you a minute to respond. Okay. Thank you, Your Honor. May it please the Court, my name is Shane Carew, and I represent Seth Rockwell. The Court is very familiar with the facts. It's obvious. When I was preparing for today, I wasn't exactly sure what my approach would be because we were dealing, on the one hand, with the denial of motion for summary judgment in which the Court is entitled to construe all facts in the light most favorable to the non-moving party. The Court then denied that motion and allowed Mr. Swenson the opportunity, in a full trial, to convince and put on evidence that apparently there was some sort of partnership agreement, that there was a partnership and therefore there was no jurisdiction. After a full trial, after two days, after hearing all the evidence, the Court concluded that there was an employee-employee relationship and that the Court had jurisdiction. I would like to address, then, some of the questions that the Court had asked, and I'd like to make some clarifications and corrections to what's been represented. Up until your Honor had a very good question about what was Mr. Swenson's conduct up to the time of trial, with respect to whether or not there was a partnership. That seems to be very confusing, and I'm not – maybe you could help us. Well, the evidence before the Court, both at the summary judgment and at trial, was as follows, Your Honor, that he had taken the depreciation deduction on the Arch 1. Did – we heard here that both parties took depreciation. That is incorrect, Your Honor. Okay. My client did not take a depreciation deduction on the Arch 1. Did you file any documents with the Internal Revenue Service indicating that you were a part owner in a boat relative to income or otherwise? The taxes, Your Honor, were prepared by Mr. Rockwell's father. I believe that the testimony at trial was he handled it the same way that a fisherman would, and they are essentially self-employed. With reference – and I believe that there was a reference in one of the documents. I don't know, and I was looking for it as the question came up, whether there was a reference to the name of the vessel. No, that's fine. I mean, if you're reporting wages, what did he report? Did he report profits and take depreciation operating expenses? Did he report wages? What did he report? No, Your Honor. He reported what he believed to be his wages. You see, he had made a donation – Well, maybe we better stop for just a second. Okay. Tell me what's in the record. All right. If there's anything about what he reported to the Internal Revenue Service with regard to his relationship to the boat or his employment. What he had reported – what's in the record is that he reported to the – on his tax returns that he had received income as a self-employed income. That's what he had reported. He had not received a 1099 or a W-2. He just reported this income that he received. So like an independent contractor. Independent contractor, Your Honor. Now, that would be different than an owner reporting income from his business. Correct, Your Honor. Okay. So if we read the record, we would find that he said, I'm an independent contractor on this boat working as an independent contractor. Yes, Your Honor. Okay. And do we have that tax return in the record? I believe it is, Your Honor. I don't see it here in the excerpts unless I've missed it in the excerpts. I believe – Is it in the excerpts? Excerpt of record supplement, page 5, Your Honor. Okay. And that's what I had been looking for, Your Honor. Even so, Your Honor, the other evidence before the court was that on credit applications, Mr. Swenson identified himself as the owner and a sole proprietor. And about the LCC, how was that set up and what does it show? That was created by Mr. Swenson without any consultation with Mr. Rockwell. It shows that he's the sole owner of all the interest in Swinrock. Now, Swinrock was a limited liability corporation. What were listed as the assets? And he was listed as the owner. But what is the nature of the LCC? LLC. Your Honor, I actually don't know. A title was never transferred of the vessel into the LLC. Yeah, see, I don't know what the LLC means because if the boat's not in it, it could mean, I don't know, fishing nets. I don't know. Maybe fishing nets on somebody else's boat. I don't know. Subsequently, I believe the testimony in the trial is that in subsequent years, Mr. Swenson intended to use and did use it as the employer. In the first two of the employees on the Arch 1. Okay, so they would have taken deductions for wages paid. They showed that he took deductions for wages paid to Mr. Rockwell. Is that in the record? No, Your Honor. That doesn't give us much then. It doesn't. Okay. Is this a purse-selling vessel? No, Your Honor. It's essentially kind of a cargo vessel that could also be used theoretically for fishing. But principally what they were using it for was to take cargo to some of the villages. They were out of grace and stuff like that. Yeah, and some of the villages out in western Alaska. I'm sorry. I just want to correct you. So what you're telling me, I think, is that the LLC doesn't give us much of anything other than the fact that he was the owner. Correct. Okay. What was the account with Peter Pan about it if they weren't fishing? They were also used as a tender vessel. And a tender vessel, Your Honor, is the sort of vessel that... Packers also goes out to the purse-sellers and sets up the fish. That's right, and provides supplies for them. They can come to the tender vessel if they need ice or fuel, those sorts of things. So they did have an account. Who made that account with Peter Pan? Who negotiated that? I believe, Your Honor, that Mr. Rockwell was on the vessel, but that it was arranged through Mr. Swenson. I mean, it was Mr. Rockwell and Mr. Swenson. Rockwell had signing authorities there, some kind of authority. Yes, Your Honor. He wouldn't have been able to pull off the four grand. Yes, Your Honor, which is not uncommon in accounts with fishing companies such as Peter Pan. They'll have, as a matter of fact, people can take draws if they're employees. They can take draws so long as there's permission from the employer or the person with the account to take draws. So how did Mr. Rockwell get the draw without, or did he have, authority from Mr. Swenson to pull the four grand off? He believed that he had authority because there was money there. That's not what he believed. What did Peter Pan think? They gave him the money. And Peter Pan believed that he had authority to draw the $4,000. Is there anything in the record that tells us or shows us what Peter Pan had to tell it that he had authority to draw the money? Your Honor, I cannot remember. Okay. I've got a question about the tax return that I'm now looking at. I'm looking at the Schedule C for tax year 1999. It is on page five of that supplemental record. Name of proprietor, Seth Alan Rockwell. Principal business, Arch One Fishing and Cargo. Business name, Arch One. Gross income, gross receipts or sales, $4,000. Then he's got repairs and maintenance, $10,066. That kind of looks like repairs and maintenance to the boat. Yes, Your Honor. So this treats him as an owner of the boat for tax purposes. That's what it sounds like. Yes, Your Honor. And what had happened, Your Honor, and this is at the trial.  What had happened is Mr. Rockwell got money from, I think, their mutual grandfather and used that money for expenses because of the vessel need to get ready to get underway. And that was repaid to him. That was eventually repaid to him. Well, first of all, we asked about what the LLC was all about, and now we're getting to the fact that we have a boat vessel plate. Was income from the business, whatever they did, tender or otherwise, run through the LLC? No. Oh. Not at this time. Counsel's talking about how loose this was, and it really was a partnership. Sounds pretty loose. Yes, Your Honor. I mean, if it's that loose, then maybe you ought to address what counsel said. Is it loose enough to fit the partnership that required or is it loose enough to become a partnership under Alaska law like he says? We haven't pinned anything down yet that really puts us into a situation of a clean employer-employee ship and a corporation ship not in a corporation. So what does it all mean? That's what was up to the trial judge, Your Honor. And he wasn't clearly erroneous in his findings. Correct. And he was not clearly erroneous in his findings. What's your strongest evidence that he's an employee? Because so far I'm looking at a lot of evidence that suggests it's a partnership. What's your strongest evidence that he's an employee? The strongest evidence that he's an employee was the employment contract. That first contract that has the quote addendum at the bottom that specifies the 38% sharing? 38% over and above the share. The second strongest evidence is that wages are based upon 38%. It sounds very much like a profit sharing. Because now if we're in a loose area, that addendum sounds very much. I must have misread it, but I thought it said that the wages were based upon that. Well, the trouble is the document is at war with itself. It's an employment contract. You've got to fill in the blank. In consideration, I'm now going to Paragraph 2. Employer views to play employee according to the following terms. $180 a day. Private contractors are aware they're responsible for their own taxes. Employer will provide meals and shelter. Already even that form is crazy. Private contractor and employee. Okay, but then we've got the addendum. After there's an agreement to pay wages of $180 a day, based on 38%, profit will be shared. This profit will be arrived at after boat money is repaid, 98 expenses, da-da-da-da-da. It sounds as though your construction, although it doesn't say over and above, it sounds as though your construction is right. That is to say, you're going to get paid $180 a day. In addition, after we run this through and what profit is left over, you get 38%. Correct. Well, if after they get that left over, he gets 38%, why isn't he a partner? Being compensated for his work at $180 a day is part of the cost of the partnership. Your Honor, because the partnership, even though there is that contract, that contract was subsequently and repeatedly basically disavowed by Mr. Swenson. Give me the evidence now under which it's disavowed, because I mentioned that. Your adversary seems to think that there wasn't really much of a disavow except for a contest about how much was owed under the partnership agreement. In what ways was it disavowed? The testimony, there was testimony at trial from Mr. Rockwell and also, I believe, testimony from Mr. Swenson with respect to how much he thought that he was going to give him and that it all depended upon Mr. Swenson meeting certain obligations down the road, years down the road. He had to turn 21. He had to become a master. And then in other conversations, he said, well, everything is in my name. You basically get nothing unless I say so. Additionally, Your Honor, I'm not just reading from Rockwell's testimony, I'm direct. Eric told me that I wasn't, I couldn't legally be a partner. So it was like his way of making sure I was taken care of, you know, if we weren't expecting to see a profit. But, you know, if we did see a profit, I'd get a profit. So he told me what was going on. He didn't get to the partnership percentages because it was like a relative worth. But according to his testimony, he understands it to say, well, he can't be a partner because he's not 21. Right. Correct. And then later in his testimony at the trial transcripts, my supplemental excerpt at four, Mr. Swenson had, or Mr. Rockwell testified that Mr. Swenson said he was not a partner. Where are you on that page? Lines eight to 11. I'm on page four of the supplemental excerpts. That's part of the question. Yes. Oh. I'm sorry, your honor, that was. OK, well, if you can't find it, don't. OK, but the question really was not so much affirmative testimony from Rockwell. My question to you was Swenson disavows. What's he say to disavow? Oh, in the in the credit applications, your honor. Also in the application to the National Marine Fisheries Service, which is supplemental excerpt pages 22, 23. I am. My apologies. I had this for some reason. I've misnumbered this. It was at the. In the trial transcripts. Sorry, your honor. OK. Yes. In the trial transcript pages 22 and 23 of the trial transcript. Sorry of the excerpt. It's the trial transcript. And Mr. Now we excerpt supplemental excerpts. I'm trying to follow. Sorry. Supplemental excerpts, your honor. OK, I'm on page 22 of supplemental excerpts. Right. And it's Swenson direct testimony. OK. And Mr. Swenson was handed exhibit eight as an application for best moratorium with the National Marine Fisheries. And in that application, he listed the owner as Eric Swenson. OK. OK. All right. Let's see. And also, your honor, in two credit applications that he had made. Let's see. He had listed himself as the Mr. Swenson had listed himself as the as the owner. And what is that on the record? That's lines two to 11 on supplemental excerpts. Twenty four. Credit application. He was questioned at trial about the credit application made out to Eagle Enterprises. And it occurs. Oh, I'm sorry. And he states that as applying for the credit, that the credit application is Eric Swenson. Swenrock. And employees or agents authorized to charge to this account. He lists as an employee and agent in that document. Your honor. This is the transcript introducing the document. We have the document in the excerpts or the original record. Your honor. Yes. Then the question comes. What difference does it make? Who's listed as the owner under Alaska law? If there can be a partnership formed regardless of what the title is. In other words, is that crucial to forming a partnership under Alaska law? That the title is in both of our names or in the LLC? Your honor. Normally in partnership law, not necessarily so. I mean, I'm not. I'm just speculating. Your honor. See, I'm wondering what this means. I mean, I understand what you're telling me, but I'm still wondering how it goes to resolving. As the district court took all this stuff in and he made the findings. Yes. So now we're going to whether the district court was clearly erroneous. What difference does that make when we're doing a clearly erroneous analysis? Right. Your honor, there basically was not. Mr. Swenson basically did not present that, yes, we are partners. He, on the one hand, is still denying that there's a partnership. He's not expressly stating what the partnership is, what the terms of the partnership are. We're not saying that this is a. We did not bring this case as a partnership dispute. Mr. Swenson is not basically saying, yes, we're partners and here's your partnership. What he's trying to do is trying to characterize a wage and an employer case as a partnership dispute. And that just wasn't the issue. Those weren't the issues in the case. Well, but it has to be the issue because if this is a partnership rather than an employer-employee relationship, the district court has no jurisdiction. Correct. But it would be incumbent upon Mr. Swenson to prove then that this was a partnership. And the district court disagreed. The district court found there was no partnership. Correct. Okay, good. Thank you. Rebuttal. Thank you, your honor. I understand. I probably don't have a lot of time. That's okay. Let's start out with a minute and see where we go. Okay. Your question, one of your questions, your honor, was whether or not Mr. Swenson disavowed the partnership. Well, in summary judgment motion, we attached 16 letters from business entities identifying that Rockwell specifically said that he was a partner and that Swenson specifically told these persons, this is my partner, this is a co-owner of Arch 1. Treat him as the co-owner of Arch 1. And so this is where we get down to the Uniform Partnership Act. And as far as property goes, Alaska Statute Title 320503, it says all property brought into the partnership becomes partnership property. Now, were those letters introduced at the trial? We had those people come in and actually testify. Okay. But that evidence did come in. Yes. Oh, yes. As I understand it, you didn't appeal from the denial of the summary judgment. You appealed the trial result. No, I actually also appealed the denial of summary judgment. Did you? Yes. And in my brief, I identify why I thought the summary judgment should have been granted. And on either account, I asked that this court dismiss it. And this really gets to a Fifth Circuit case, Temple Drilling v. Louisiana, where it said admiralty jurisdiction over state law claims is at best uncertain and courts have been reluctant to find admiralty jurisdiction where interpretation of a state statute is necessary for resolution. I think I cited that in my brief, but that's 946 Federal 2nd 390. And that seems absolutely applicable here, because before the district court can determine whether or not there's a partnership, he has to reference the Uniform Partnership Act that is in Alaska, that two Alaskans sat there and devised as the controlling document. Alaska's law says, Alaska's partnership law says that this is what controls. That's at 325.975. The liability of the partners. What it comes down to is, was the district judge correct in finding this was an employer relationship or was he compelled by the evidence to find that it was a partnership? Exactly. On the other hand, I want to make one point. Make sure I'm right. I just checked. You did appeal the denial of summary judgment. If we reverse that, we never get to the trial. So the judge's findings are irrelevant if we go on that ground. That's what I heard. All right. Thank you, Your Honor. Thank you very much. The last case on the argument calendar this morning, Rockwell v. Finchman is now submitted for decision. We're in adjournment until tomorrow morning at 9 o'clock. Thank you.
judges: Goodwin, Brunetti, W. Fletcher